**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
   **Plaintiff,**

  v.              Case No. 06-CR-181

**ANAS SALEM**
   **Defendant.**

---

## SENTENCING MEMORANDUM

A jury found defendant Anas Salem guilty of witness intimidation, 18 U.S.C. § 1512(b)(2)(A), and brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii). The charges arose out of defendant's abduction at gunpoint of a fellow Latin Kings gang member, Carlos Lopez, a cooperator in the government's prosecution of the gang. I entered judgment on the jury's verdict, directed the probation office to prepare a pre-sentence report ("PSR") and set the case for sentencing.

In imposing sentence, the district court must first calculate the advisory sentencing guideline range, then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007); see also Gall v. United States, 128 S. Ct. 586, 596 (2007). Written reasons for my determinations on these two issues follow. See 18 U.S.C. § 3553(c).

### I.  GUIDELINES

The PSR initially set defendant's offense level at 24 on the witness intimidation count: base level 14, U.S.S.G. § 2J1.2(a), plus 8 based on threats to cause physical injury to the victim, § 2J1.2(b)(1)(B), and plus 2 based on defendant's leadership role in the offense, §

3B1.1(c).[1]

However, the government argued for a cross-reference under U.S.S.G. § 2J1.2(c). That guideline provides: "If the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above." The government argued that defendant's offense level should be enhanced under the cross-reference because he obstructed the federal RICO prosecution of the Latin Kings.

While § 2X3.1 ordinarily applies to convictions for acting as an accessory after the fact, it also serves as a tool for calculating the base offense level for more serious obstruction offenses. See United States v. Russell, 234 F.3d 404, 410 (8th Cir. 2000). The cross-reference is mandatory when the offense involves obstructing the investigation or prosecution of a criminal offense without any qualification and without regard to whether defendant or anybody else was convicted of the underlying offense, or whether an offense could be shown to have been committed at all. United States v. McQueen, 86 F.3d 180, 182 (11th Cir. 1996). Section 2X3.1 generally provides for an offense level 6 levels lower than the offense level for the underlying offense, but not less than level 4 nor more than 30. U.S.S.G. § 2X3.1(a). The parties agreed that this provision was applicable in the present case, but I had to make a factual determination as to the appropriate offense level under the cross-reference. See United States v. Connolly, 341 F.3d 16, 32 (1st Cir. 2003); United States v. Arias, 253 F.3d 453, 460 (9th Cir. 2001); United States v. Dickerson, 114 F.3d 464, 467-68 (4th Cir. 1997).

---

[1] The § 924(c) count carried a mandatory 7 year consecutive sentence. See U.S.S.G. § 2K2.4 (stating that the guideline sentence on a § 924(c) conviction is the term of imprisonment required by statute). Because defendant brandished the firearm in this case, the statute required a 7 year sentence. 18 U.S.C. § 924(c)(1)(A)(ii).

2

In determining the offense level under the cross-reference, the court does not decide whether the underlying offense had been proven. Proof of the underlying offense is not material because the point of the cross reference is to punish more severely and to provide a greater disincentive for the obstruction of prosecutions with respect to more serious crimes. Arias, 253 F.3d at 459. In other words, the use of § 2X3.1 is intended not to treat the defendant as having committed the underlying offense, but to weigh the severity of his actions in obstructing justice based on the severity of the underlying offense that was the subject of the judicial proceeding sought to be obstructed. United States v. Brenson, 104 F.3d 1267, 1285 (11th Cir. 1997).

This does not mean that the court must automatically apply the guideline applicable to the most serious underlying offense that was charged. Arias, 253 F.3d at 460 (citing Dickerson, 114 F.3d at 469). Rather, the district court should make a finding on what constitutes the underlying offense. When there is more than one possible underlying offense, it is up to the sentencing court to determine (by a preponderance of the evidence) with respect to which crimes being prosecuted the obstructive conduct occurred. Id. at 461. Where the obstruction concerns a RICO prosecution, the offense level will generally be based on the most serious predicate act in the RICO case obstructed.[2] See Connolly, 314 F.3d at 32-33.

The underlying prosecution here was the RICO case brought against the Milwaukee chapter of the Latin Kings. The government argued the offense level in that RICO case should be determined under the first-degree murder guideline, § 2A1.1, which produced a base level of 43 (reduced to 30 under 2X3.1(a)(3)(A)). I agreed. Two of the defendants in the Latin Kings

---

[2] The offense level in RICO cases generally depends on the nature of the predicate acts. See U.S.S.G. § 2E1.1(a)(2).

3

RICO case pleaded guilty to predicate acts of murder, and the evidence demonstrated that defendant's effort to dissuade Lopez from testifying pertained to one of those defendants in particular. I therefore applied a base offense of 30 under the cross-reference.

Defendant objected to the recommended 2 level enhancement under U.S.S.G. § 3B1.1(c). That provision applies if the defendant was an organizer, leader, manager or supervisor in criminal activity involving less than five participants. In determining whether a § 3B1.1 enhancement should apply, the court considers factors such as the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. The adjustment does not apply to a defendant who merely suggests committing the offense. U.S.S.G. § 3B1.1 cmt. n.4. The government bears the burden of demonstrating, by a preponderance of the evidence, that the enhancement applies. United States v. Cortina, 733 F. Supp. 1195, 1199 (N.D. Ill. 1990).

In this case, the PSR recommended the enhancement based on defendant's direction of Marcos Colin, the other participant in the abduction of Lopez. I concluded that the enhancement did not apply. It appeared that defendant and Colin were relatively equal in this endeavor. It was true that defendant did most of the talking during the encounter with Lopez, and that he ordered Lopez around. I did not doubt that Lopez perceived defendant to be in charge. But there was no evidence that defendant directed or recruited Colin, the other participant. Both were gang members of relatively equal age, and there was no indication that defendant held a higher rank in the gang. It also appeared that Colin ultimately decided that

4

Lopez would not be further harmed, suggesting that he and defendant were equals.[3]

Therefore, I concluded that defendant's final offense level was 30, his criminal history category III, and his imprisonment range 121 to 151 months plus 7 years consecutive on the § 924(c) count. I turned then to imposition of sentence under 18 U.S.C. § 3553(a).

## II. SECTION 3553(a)

### A. Sentencing Factors

In imposing sentence, the district court considers the factors set forth in § 3553(a), United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

---

[3] I also noted that when called to testify in this case Colin refused, even when I warned that he could be held in contempt, demonstrating that he was not easily directed.

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. This "parsimony" requirement represents the "overarching provision" of the statute, Kimbrough v. United States, 128 S. Ct. 558, 570 (2007), and serves as "the guidepost for sentencing decisions post-Booker." United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006).

While the guidelines remain an important consideration, § 3553(a) controls the court's deliberations. See United States v. Miranda, 505 F.3d 785, 791 (7th Cir. 2007). The district court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007), or elevate the guidelines above the other § 3553(a) factors, see, e.g., United States v. Schmitt, 495 F.3d 860, 864-65 (7th 2007). Rather, after accurately calculating the advisory range so that it "can derive whatever insight the guidelines have to offer, [the district court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

**B.    Analysis**

**1.    Nature of Offense**

As indicated above, defendant and a gang associate, Colin, abducted Lopez, who was cooperating with the government in a Latin King investigation, at gun point. Defendant accused

6

Lopez of snitching. Lopez insisted that he wasn't and offered to show defendant some paperwork on the case he had at his house. Defendant warned Lopez not to do anything stupid or they would kill Lopez's mother. Of course, Lopez had no paperwork, he was just trying to stall. The three eventually left the Lopez house, and defendant directed Lopez to drive to a residence and get out. Lopez believed defendant was going to kill him, so he struggled with defendant for the gun. Colin intervened, struck Lopez, and he and defendant wrestled Lopez down. Defendant then put a gun to Lopez's head and said, "I should kill you now." Colin apparently did not want to do that based on his previous relationship with Lopez, so the three got back in the car and drove around for awhile before Lopez dropped the other two off. There is no indication that defendant made further threats or attempts on Lopez's life, and Lopez suffered only minor injuries in the scuffle.

### 2. Character of Defendant

Defendant was twenty years old and had a fairly significant juvenile record, including adjudications for battery, retail theft, attempted armed robbery and second degree recklessly endangering safety. The final matter involved the robbery of a pizza delivery driver at gun point, during which the gun went off hitting the driver in the leg. Defendant spent over a year at a juvenile facility for that offense and committed the instant offenses within a few months of his release.

Defendant was born in Palestine in 1987 and came to this country with his mother in 1996, becoming a naturalized citizen. His childhood was difficult, first with the violence in the West Bank, then dealing for a time with his abusive, alcoholic father in the United States. He received support from his mother and maternal uncles but still slid into trouble with the law in his early teen years, joining the Latin Kings and committing the offenses discussed above.

7

I concluded that defendant would benefit from anger management treatment, as he seemed to admit. I also recommended drug treatment, based on his admitted use of marijuana. Defendant made efforts to obtain his GED while detained on this case, which was positive. His employment history was limited to part-time work in his uncle's store.

### 3. Guidelines and Purposes of Sentencing

The guidelines recommended 121-151 months on the witness intimidation count, and the statute required 7 years consecutive on the § 924(c) count. Under all of the circumstances, I found a total sentence of 12 years sufficient but not greater than necessary to satisfy the purposes of sentencing. This was a serious crime, certainly terrifying for the victim, and involved a firearm, so substantial confinement was needed to provide just punishment. However, no significant or lasting physical harm came to the victim, and the gun was not discharged. The § 924(c) count provided strong punishment for the use of the gun. The underlying prosecution was not derailed or seriously endangered based on defendant's conduct, and the crime comprised a single incident rather than a pattern of threats or intimidation. I also considered the fact that defendant had been confined in local jails for over two years during the pendency of this case, hard time with little recreation or programming, at least as compared to a federal prison. Therefore, a total sentence of 12 years provided just punishment. See 18 U.S.C. § 3553(a)(2)(A).

Defendant had never been to prison before, and this was his first adult conviction. Therefore, a 12 year sentence was certainly sufficient to deter him from re-offending. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to

8

re-offend."). Likewise, someone considering engaging in similar threatening conduct should be deterred by the prospect of a 12 year sentence. See 18 U.S.C. § 3553(a)(2)(B).

I also found this sentence sufficient to protect the public. There was no indication that defendant posed a threat generally based on the facts of this case, or that he held any rank or leadership position in the gang. Defendant also had a supportive family, who would assist him on his release.[4] I included a lengthy period of supervised release with specific conditions to ensure that defendant avoided criminal associations in the future. See 18 U.S.C. § 3553(a)(2)(C).

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 60 months on the witness intimidation count and 84 months consecutive on the § 924(c) count for a total of 144 months. I based this sentence on my analysis of the § 3553(a) factors, noting that it would have been the same regardless of my findings on the guidelines. I recommended that defendant participate in anger management, GED/HSED courses and drug treatment during his period of incarceration, and that he be placed at a facility as close to Milwaukee as possible to ensure continued family contact. Upon completion of his prison sentence, I ordered him to serve five years of supervised release, with conditions including no gang association and drug testing and treatment. See 18 U.S.C. § 3553(a)(2)(D).

Dated at Milwaukee, Wisconsin, this 11th day of April, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[4]Several family members appeared in support at defendant's sentencing.

9